Cats and Dogs Animal Hospital, Inc. v. Yelp! Inc.
Case 2:10-cv-01340-VBF-SS   Document 1   Filed 02/23/10   Page 1 of 20
Doc. 1

FILED
2010 FEB 23 PM 2: 06
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY _____

1  THE WESTON FIRM
2  GREGORY S. WESTON (239944)
   JACK FITZGERALD (257370)
3  888 Turquoise Street
   San Diego, CA 92109
4  Telephone:  858 488 1672
5  Facsimile:    480 247 4553
   greg@westonfirm.com
6  jack@westonfirm.com
7
8  BECK & LEE BUSINESS TRIAL LAWYERS
   JARED H. BECK (233743)
9  ELIZABETH LEE BECK (233742)
   Courthouse Plaza Building
10 28 West Flagler Street, Suite 555
11 Miami, FL 33130
   Telephone:  305 789 0072
12 Facsimile:    786 664 3334
13 jared@beckandlee.com
   elizabeth@beckandlee.com
14
15 Attorneys for Plaintiff and the Proposed Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATS AND DOGS ANIMAL HOSPITAL, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>YELP! INC.,<br><br>Defendant. | Case No: **CV10 -1340 VBF (SSx)**<br><br>Pleading Type: Class Action<br><br>**COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Cats and Dogs Animal Hospital, Inc. ("Plaintiff" or "Cats and Dogs"), on behalf of itself and all others similarly situated, by and through undersigned counsel, hereby sues Defendant Yelp! Inc. ("Defendant" or "Yelp") and, upon information and belief and investigation of counsel, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the members of the Class reside in states other than that state of which Defendant is a citizen.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and suffered injuries as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this district, and Defendants (1) are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets of this district through the promotion, marketing, and sale of advertising in this district; (2) reside in this district, and (3) are subject to personal jurisdiction in this district.

## PARTIES

3. Plaintiff Cats and Dogs is a California corporation with its principal place of business in Long Beach. Cats and Dogs is owned and operated by Gregory Perrault ("Dr. Perrault"), a veterinarian.

4. Defendant Yelp is a Delaware corporation with its principal place of business in San Francisco, California. Yelp owns and operates Yelp.com, a popular online directory and user-ratings website.

## INTRODUCTION AND BACKGROUND

5. The term "Web 2.0" describes internet websites and applications that revolve around information sharing and user-centered design. Examples of Web 2.0 websites include social networking sites (e.g., Facebook.com), video sharing sites (e.g., YouTube.com), wikis (e.g., Wikipedia.com), blogs, and many other sites that allow users to create, upload, or modify content. Web 2.0 websites thus allow internet users to do much more than simply retrieve information—the users choose what information to interact with, how they interact with it, and how to modify or add to pre-existing content.

6. Online review applications are an increasingly popular form of Web 2.0. Companies such as Amazon.com, Best Buy, and TripAdvisor.com, embed Web 2.0 applications within their websites, which allow users to rate products and services and share their experiences.

7. Yelp.com, a website owned and operated by Defendant Yelp, is a website that utilizes Web 2.0 user-website interaction.

8. Yelp.com consists of an online directory of businesses in multiple categories, much like an online Yellow Pages. Each business listed on Yelp.com has a unique Yelp.com listing page, which provides basic business information (such as address, phone number and hours of operation), and user-generated ratings and reviews.

9. To rate businesses, internet users simply register on the Yelp.com website. Any internet user (whether registered or not) can browse Yelp.com to find reviews of businesses.

10. Ratings-based websites, including Yelp.com, are highly popular, and have great power to direct the flow of commerce in a given area. Users frequently read ratings and reviews for all of the businesses in a particular category and locale and then decide where to spend their money based on those ratings and reviews.

11. Yelp, however, regularly manipulates the content on Yelp.com listing pages, despite Yelp's mantra of "Real people. Real reviews."

12. One method Yelp uses to control content (and thereby raise or lower a business's rating), is to promise to remove a business's negative reviews or relocate them to the bottom of a listing page where fewer searchers will read them if the business agrees to purchase a costly monthly advertising subscription from Yelp. Yelp thus capitalizes on the presumed integrity of the Yelp.com ratings system to extort business owners to purchase advertising.

13. As a result, business listings on Yelp.com, contrary to the website's "Real people. Real reviews." mantra, are in fact biased in favor of businesses that buy Yelp advertising.

## FACTUAL ALLEGATIONS

14. On September 12, 2009, Dr. Perrault became aware of a negative review posted by "Chris R." on the Cats and Dogs Yelp.com listing page.

15. Concerned about the review's defamatory language, possible falsity, and the adverse impact it could have on his business, Dr. Perrault cross-referenced the factual information alleged in the review with his client history.

16. Upon finding that the review of Chris R. referenced a visit that occurred over 18 months prior to its posting (6 months outside of Yelp's 12-month policy), Javier Vargas, the Hospital Manager at Cats and Dogs, called Yelp, on or around September 15, 2009, to request that the review be removed from the Yelp.com website for violating Yelp's review guidelines. The review was subsequently removed from the Cats and Dogs Yelp.com listing page.

17. A second defamatory review, from "Kay K.," appeared on the Cats and Dogs Yelp.com listing page within five days of the "Chris R." review's removal. The review read:

> *The only reason I am even giving one star is because it wouldn't allow me to continue without it . . . otherwise, I would have given them no stars. Dr. Perrault is the rudest vet I've ever been to . . . probably one of the rudest people I've had the displeasure of meeting. I agree with the previous reviews about making you feel like an unfit mom. My pup had been sick and I had a theory on what the problem may have been and he wouldn't even entertain the idea, but instead, made me feel bad because my dog got sick. And, my poor dog was terrified of him! He made me feel like I was 2 inches tall and repeatedly looked down his nose at me. Oh, and OVER PRICED! OMG! Who does he think he is??? I did not feel welcomed by him nor his staff. I paid you for a service! No need to treat me so bad!*

18.  Soon after the appearance of these negative reviews, Dr. Perrault and Mr. Vargas began receiving frequent, high-pressure calls from Yelp advertising employees, who promised to manipulate Cats and Dogs' Yelp.com listing page in exchange for Cats and Dogs purchasing an advertising subscription.

19.  For example, on or about January 5, 2010, Cats and Dogs received a Yelp sales call from "Kevin." Kevin said that Cats and Dogs could advertise with Yelp for a minimum payment of $300 per month, with a minimum 12-month commitment. Kevin stated that if Cats and Dogs purchased a one-year advertising subscription from Yelp:

   a.  Yelp would hide negative reviews on the Cats and Dogs Yelp.com listing page, or place them lower on the listing page so internet users "won't see" them;

   b.  Yelp would ensure negative reviews will not appear in Google and other search engine results;

     c.    Yelp would allow Cats and Dogs to decide the order that its reviews appear in on its Yelp.com listing page; and

     d.    Cats and Dogs could choose its "tagline," i.e., the first few lines of a single review shown on every search result page in which Cats and Dogs appears (for instance, "Veterinarian in Long Beach").

20. Dr. Perrault declined the offer, saying that he wanted to track referrals from Yelp for three months without ads, but might thereafter be willing to test Yelp's advertising potential.

21. Within a week of denying Kevin's advertising offer, the negative review from Chris R. reappeared on the Cats and Dogs Yelp.com listing page.

22. Soon after, "Kay K." posted a second negative review. This review was added on January 6, 2010, one day after Kevin's sales call:

> *I've already left one review about how bad a vet Dr. Perrault is, but I wanted to add something. I've been reading other people's reviews and I must have gone to a different Cats and Dogs Animal Hospital with a vet named Dr. Perrault. Oh wait, no . . . he's the only one. Maybe it's a Dr. Jeckyl / Mr. Hyde thing?! I don't know. But the guy's an @$$. No other way around it. He's a jerk, a D-Bag, And so arrogant. I ran in to him in a neighborhood store right after he saw my poor sick dog at his clinic and he looked right at me, recognized me, rolled his eyes and looked away!!!! Seriously, someone needs to knock this guy down to the size he really is. He needs to drop his Napolean complex and be a professional. After my horrible experience with him, I took my sick dog to Bixby Animal Clinic and I have never had a more pleasant vet experience! Go there instead! My dog loved everyone there!*

1  *Sorry to rant, but I just wanted to get the word out there. Don't spend*
2  *the money on this overpriced errogent vet. It's not worth it!*

3  23.  On or about January 12, 2010, Mr. Vargas contacted Yelp to protest
4  the reappearance of the "Chris R." review and the highly negative, inflammatory
5  "Kay K." reviews.

6  24.  On January 13, 2010, Mr. Vargas received via email the following
7  response from Yelp:

8  We wanted to let you know that we've taken a close look at the
9  reviews by Chris R and Kay K, and after careful evaluation, we have
10  decided to leave both intact. Because we don't have firsthand
11  knowledge of a reviewer's identity or personal experience, we are not
12  in a position to verify your claims that these reviewers are the same
13  person, or that they are connected to the recent vandalism at your
14  hospital. If a review appears to reflect the personal opinion and
15  experiences of the reviewer while adhering to our review guidelines
16  [link], it is our policy to allow the reviewer to stand behind his or her
17  review.

18  25.  As of January 18, 2010 Cats and Dogs enjoyed a 4-star rating (out of a
19  possible 5) on its Yelp.com listing page. Sixteen out of 26 reviews (over 60%)
20  gave Cats and Dogs a perfect 5-star rating. Despite this, as of January 18, 2010, a
21  Yelp.com search for "veterinarian in Long Beach" displayed the following tagline
22  for Dogs and Cats:

23  *"Dr. Perrault is the most inept/rude veterinarian I have ever met. He*
24  *had my rescue dog cowering and barking in the corner of the exam*
25  *room within seconds of meeting him. He berated me for 20 . . ."*

26  26.  Compare Cats and Dogs' tagline to the tagline (as of January 18,
27  2010) of Bixby Animal Clinic, a Long Beach veterinary business that is a Yelp

advertiser (and the same company the mysterious Kay K. referred users to in her second Cats and Dogs review):

> *"This place IS awesome. I brought my little man (Bruin) to Dr. A. as a puppy for the puppy package. They have great hours and were able to acommodate me AFTER work so I never had to take extra time . . . "*

27.   Yelp frequently exercises its control over the Yelp.com listing application to modify business listing pages to the advantage of businesses that purchase Yelp advertising subscriptions, and the disadvantage of those that decline.

28.   Dr. Perrault's experience with Yelp was not unique, but rather typical of Yelp's advertisement sales tactics.

29.   A February 18, 2009 article in the East Bay Express, titled *Yelp and the Business of Extortion 2.0*,[1] describes Yelp's unlawful business practices. According to the article:

- Yelp sales representatives contact business owners saying, "**[Y]ou have a few bad [reviews] at the top. I could do something about those. . . . We can move them. Well, for $299 a month**."

- Almost all the time when Yelp calls business owners, negative reviews are at the top of the business's Yelp.com listing page.

- Mary Seaton, the owner of a furniture store in San Mateo, **took Yelp up on an offer to remove her negative reviews if she advertised at a cost of $350 per month for six months. During that time, her negative reviews were removed and old positive ones showed up. After her contract was up, a negative review appeared**, which Seaton said contained lies.

---

[1] *Available at* http://www.eastbayexpress.com/eastbay/yelp-and-the-business-of-extortion-20/Content?oid=1176635.

7

- Greg Quinn, the owner of a San Francisco bar and bistro, said **a Yelp sales representative moved negative reviews further down his page in an effort to entice him to advertise**. The sales rep called Mr. Quinn and said, **"Did you notice what I did? Well, we can keep doing that for you."**

- An East Bay business owner said **Yelp offered to move one- or two-star reviews of his business if he advertised**.

- Six people told the East Bay Express that **Yelp sales representatives promised to move or remove negative reviews if their businesses would advertise**.

- Six other people told the East Bay Express that **positive reviews disappeared, or negative reviews appeared, after owners declined to advertise**.

- Yelp pays its employees to write reviews of businesses; in one documented instance, **a business owner who declined to advertise subsequently received a negative review from a Yelp employee**. In other cases, businesses that receive negative reviews from paid Yelp employees are subsequently asked to advertise.

- Yelp's Chief Operating Officer, Geoff Donaker, said advertisers and sales representatives do not have the ability to move or remove negative reviews. Donaker's denials are challenged both by local business owners, and by **a former Yelp employee, who said that several sales reps told him they promised to move reviews to get businesses to advertise**.

30. As of February 8, 2010, there are 140 comments on the East Bay Express website following the Yelp article, many from business owners describing experiences similar to those discussed in the article.

31. A follow-up East Bay Express article provides further evidence of Yelp's unlawful sales practices. The March 18, 2009 article, *Yelp Extortion Allegations Stack Up: More business owners come forward with tales of unethical behavior by the popular San Francisco-based web site*[2] states that since the publication of the first article:

> [M]any business owners from around the country have come forward—via emails or comments on the *Express'* web site—alleging similar tales of extortionist tactics by Yelp sales reps. . . . Business owners contend that they just want [an] opportunity to respond to negative, false, or damaging information about their businesses. Instead, the only way for them to salvage their businesses' reputation is by paying Yelp—regardless of whether the reviews are true or false. . . . [S]everal [interviewees] said that the reps would offer to move negative reviews if they advertised; and in some cases positive reviews disappeared when they refused, or negative ones appeared. In one case, a nightclub owner said Yelp offered positive reviews of his business in exchange for free drinks.

32. The article tells the stories of six California business owners' experiences with Yelp:

- After Bob Hyde, owner of M&M Auto Werkes in Campbell, received a negative rating from a customer's boyfriend, violating Yelp's Terms of Service (prohibiting third parties from posting reviews), he contacted Yelp

---

[2]*Available at* http://www.eastbayexpress.com/eastbay/yelp-extortion-allegations-stack-up/Content?oid=1176984.

9
COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW

sales representative Jacqueline Fitzhugh to complain. She told him, **"We can't control that, but if you advertise you can control the order that they're in."** After declining, Mr. Hyde noticed some of his five-star posts were disappearing. Yelp told him the website has a spam filter, like Google. Hyde tracked his reviews, printing them daily to monitor which ones would disappear. Some five-star reviews stayed up for as short as 31 days and as long as 131 days. **Yelp told Hyde that if he advertised, some of those five-star reviews would come back**.

• Calvin Gee of Haight Street Dental in San Francisco saw his rating drop from five-stars to 3.5-stars following his declining to buy advertising. **Yelp reps told Gee that if he advertised, they would let him choose his favorite review and would move the negative reviews to the bottom of the page**. Gee noticed that one of his competitors, CitiDent, had two separate listings on Yelp.com. The business had more positive reviews and a higher star rating on the page that was marked a Yelp sponsor, and more negative reviews and a lower star rating on the harder to find non-sponsored page.

• Larry Trujillo owns the Uptown Nightclub in Oakland. Shortly after opening the club, a Yelp sales rep began calling him "almost daily" about advertising. The sales rep would say **"I notice you have a lot of positive reviews. We could make sure that those reviews stay positive."** Sarah Lippman, a Sales Manager at Yelp, separately asked Mr. Trujillo for free use of his club with Yelp staff and alcohol expenses paid by the club in exchange for positive reviews on the club's Yelp.com listing page.

- Debbie Leonardo, director of membership at the Ruby Hill Golf Club in Pleasanton, received a phone call from a **Yelp sales representative who told her that the business could get rid of its worst review if it purchased advertising**.

- Bob Kurtz, owner of Collectors Real 3 in Oakland, was contacted by a Yelp sales person after receiving a negative review. In an email, **Yelp told him that, as a paid advertiser, the negative review could be dealt with**.

- Nicholas Paul, an instructor at a Chicago art studio, declined to purchase advertising and shortly thereafter three positive reviews disappeared from and two negative ones were added to the studio's Yelp.com listing page. **A Yelp sales rep told Mr. Paul he could control that**.

33. An August 13, 2008 article in The Register, a news website, titled *Yelp "pay to play" pitch makes shops scream for help: User generated discontent*[3] notes that:

> At least some of Yelp's sales staff hope to make money by offering to hide what you and I have to say. Over the last year, five San Francisco Bay Area business have told *The Register* that **the company has offered to "push bad reviews to the bottom" of their yelp pages if they paid to advertise on the site**. One restaurant owner was contacted "five or six" times, and each time, the Yelp sales rep insisted that if he forked over $6,000 a year for "sponsored link" status, the site would suppress user posts that put his restaurant in a less-than-positive light. "They told me I had 60 reviews on my [Yelp]

---

[3] *Available at* http://www.theregister.co.uk/2008/08/13/yelp_sales_pitch/print.html

page," said the owner . . . . "They told me 'No one is going to read all 60. They're only going to read the first few.'"

34.  A March 9, 2009 Chicago Tribune article, titled *Questions arise over Yelp's ads, reviews; Businesses say site rearranges opinions for price; CEO denies*,[4] reported:

- Ina Pinkney of Ina's restaurant in the West Loop said that last summer **a Yelp salesperson offered "to move up my good reviews if I sponsored one of their events. They called it rearranging my reviews."**

- Jason Luros, an attorney at Hudson & Luros in Napa, California, stated "one of our reviews mysteriously disappeared, so I contacted Yelp and was given the usual canned response about how no humans control the reviews. But **when I said I would consider advertising if they restored the review, it mysteriously reappeared.**"

35.  An April 3, 2009 article in the Santa Monica Daily Press titled *Yelp Sales Tactics Cause Concern Among Businesses*,[5] reported:

After declining to advertise, the [Los Angeles area] business owner checked the Yelp page again and noticed that at least 10 positive reviews had disappeared while a few negative ones had been posted. . . . They estimate that at least 20 positive reviews had been deleted from the site since the conversation with Yelp about three weeks ago.

---

[4] No longer available online.

[5] *Available at* http://www.smdp.com/Articles-c-2009-04-02-52021.113116_Yelp_sales_tactics_cause_for_concern_among_businesses.html

12

COMPLAINT FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW

## CLASS REPRESENTATION ALLEGATIONS

36. Plaintiff brings this action on behalf of itself and the following Class:

> All persons and entities (excluding officers, directors, and employees of Yelp) in the United States for which Yelp has offered or threatened to manipulate a Yelp.com listing page in exchange for purchasing or declining to purchase advertising.

37. Like Cats and Dogs, all members of the Class have a Yelp.com listing page.

38. Like Cats and Dogs, all members of the Class were contacted by Yelp sales representatives.

39. Like Cats and Dogs, all members of the Class were promised that, if they purchased advertising from Yelp, negative reviews would be removed or relocated from their Yelp.com listing pages, or those pages would otherwise be favorably manipulated, including through their own input or control.

40. Like Cats and Dogs, all members of the Class were threatened, implicitly or expressly, that if they did not purchase advertising from Yelp, their Yelp.com listing pages would be detrimentally manipulated, including for example, by removing positive reviews and posting new, negative reviews.

41. Plaintiff's claims on behalf of the Class are maintainable under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

42. The questions of law and fact common to Plaintiff and the Class include:

   a. Whether Yelp violated the Unfair Competition Law;
   b. Whether Plaintiff and the Class were injured by the conduct complained of herein;
   c. Whether the conduct described herein is ongoing; and
   d. Whether members of the class are entitled to injunctive relief.

## CLAIM FOR RELIEF

**Violations of the Unfair Competition Law, Bus. & Prof. Code § 17200**

43. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

44. The advertising sales and employee reviewing practices of Yelp as alleged herein constitute unfair business acts and practices because they are immoral, unscrupulous, and offend public policy.

45. The practices of Yelp complained of herein had no countervailing benefit to consumers or competition when weighed against the harm caused by such practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself, all others similarly situated, and the general public, prays for judgment and relief against Yelp Inc. as follows:

A. Declaring this action to be a proper class action.

B. An order permanently enjoining Yelp from engaging in the practices complained of herein.

C. An order compelling Yelp to disgorge all monies, revenues, and profits obtained by means of its wrongful acts and practices.

D. An order requiring Yelp to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be unlawful, plus pre- and post- judgment interest thereon.

E. Costs, expenses, and reasonable attorneys' fees.

F. Any other and further relief the Court deems necessary, just, or proper.

# JURY DEMAND

Plaintiff demands a trial by jury.

DATED: February 22, 2010              Respectfully Submitted,


                                      _____
                                      Gregory S. Weston

                                      THE WESTON FIRM
                                      Gregory S. Weston
                                      Jack Fitzgerald
                                      888 Turquoise Street
                                      San Diego, CA 92109
                                      Telephone:  858 488 1672
                                      Facsimile:   480 247 4553

                                      BECK & LEE BUSINESS TRIAL
                                      LAWYERS
                                      Jared H. Beck
                                      Elizabeth Lee Beck
                                      Courthouse Plaza Building
                                      28 West Flagler Street, Suite 555
                                      Miami, FL 33130
                                      Telephone:  305 789 0072
                                      Facsimile:   786 664 3334

Name & Address:
YELP! INC
706 Mission St, 7th Floor
San Francisco, CA 94103

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATS AND DOGS ANIMAL HOSPITAL, INC., on behalf of itself and all others similarly situated,<br><br>PLAINTIFF(S)<br>v.<br><br>YELP! INC.,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV10 -1340 VBF (SSx)<br><br><br>SUMMONS |

TO: DEFENDANT(S): YELP! INC

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Gregory S. Weston_____, whose address is _The Weston Firm, 888 Turquoise Street, San Diego, CA 92109_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **FEB 2 3 2010**

By: **DODJIE LAGMAN**   SEAL
Deputy Clerk

(Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

CV-01A (12/07)   SUMMONS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Valerie Baker Fairbank and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

```
CV10- 1340 VBF (SSx)
```

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| CATS AND DOGS ANIMAL HOSPITAL, INC., on Behalf of Itself and All Others Similarly Situated | YELP! INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| The Weston Firm, Gregory S. Weston, 888 Turquoise Street, San Diego, CA 92109 (858) 488-1672;   Beck and Lee Business Trial Lawyers, Jared H. Beck, 28 West Flagler Street Suite 555, Miami, FL 33130 (305) 789- 0072 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No          ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint for Violations of the Unfair Competition Law, Bus. and Prof. Code § 17200

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | | | |
| ☐ 810 Selective Service | | | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| | | | ☐ 443 Housing/Acco- mmodations | | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | IMMIGRATION | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- Alien Detainee | | | |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV10 -1340 VBF (SSx)**

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | San Francisco |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_   Date 2-9-10

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |