**THE WESTON FIRM**
GREGORY S. WESTON (239944)
JACK FITZGERALD (257370)
888 Turquoise Street
San Diego, CA 92109
Telephone: (858) 488-1672
Facsimile:   (480) 247-4553
greg@westonfirm.com
jack@westonfirm.com

**BECK & LEE BUSINESS TRIAL LAWYERS**
JARED H. BECK (233743)
ELIZABETH LEE BECK (233742)
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone:  (305) 789-0072
Facsimile:   (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

**<u>Attorneys for Plaintiffs and the Proposed Classes</u>**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CATS AND DOGS ANIMAL HOSPITAL, INC., et al., on behalf of themselves and all others similarly situated, <br><br>      Plaintiffs, <br><br>    v. <br><br> YELP! INC., <br><br>      Defendant. | Case No: 2:10-cv-01340-VBF-SS <br> Pleading Type: Class Action <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT YELP! INC.'S MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))** <br><br> Hearing Date: May 10, 2010 <br> Hearing Time: 1:30 p.m. <br> Judge: Hon. Valerie Baker Fairbank |
| CHRISTINE LaPAUSKY d/b/a D'AMES DAY SPA, on behalf of herself and all others similarly situated, <br><br>      Plaintiff, <br><br>    v. <br><br> YELP! INC., <br><br>      Defendant. | Case No. 2:10-cv-01578-VBF-SS |

---

*Cats and Dogs Animal Hospital, Inc.et al. v. Yelp! Inc.*, Case No. 2:10-cv-01340-VBF-SS
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2

III.  ARGUMENT ........................................................................................... 3

    A. Defendant Must Make A "Strong Showing Of Inconvenience To
    Warrant Upsetting The Plaintiff's Choice Of Forum" .................................. 3

       1.  Section 1404(a) Requires The Court To Balance Private And Public
          Interest Factors Affecting Convenience ...................................... 3

       2.  Unless The Balance Is Strongly In Favor Of The Defendant, The
          Plaintiff's Forum Choice Should Rarely Be Disturbed ........................... 4

    B. Plaintiffs' Choice Of The Central District Of California Should Not Be
    Disturbed ................................................................................................ 5

       1.  Plaintiffs' Chosen Venue Is Entitled To Great Deference,
          Especially Given Yelp's Active And Deep Intrusion Into The
          Central District Of California ...................................................... 5

       2.  The First-To-File Rule Weighs Heavily Against Transfer ....................... 7

       3.  The Central District Of California Has A Strong Interest In
          Deciding This Controversy ......................................................... 8

       4.  Yelp Has Failed To Show That Ease Of Access To Proof Or
          Difference In Cost Of Litigation Favors Transfer ............................ 9

       5.  The Permissive Forum Selection Clauses In Yelp's TOS And
          Advertising Agreements Cannot Overcome Plaintiffs' Choice Of
          Forum ..................................................................................... 11

           a.  Because They Are Permissive Rather Than Mandatory, The
              Forum Selection Clauses Carry Little Weight In The Transfer
              Analysis ........................................................................ 11

           b.  The Forum Selection Clauses Should Be Disregarded As
              Unconscionable ............................................................. 13

           c.  Legal Standard For Unconscionability ................................. 14

              i.  The TOS Forum Selection Clause Is Procedurally
                 Unconscionable .................................................... 17

              ii.  The TOS Forum Selection Clause Is Substantively
                 Unconscionable .................................................... 21

              iii.  The Advertising Agreements Are Unconscionable ........ 22

IV.  CONCLUSION ..................................................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**

*A&M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114 (Cal. Ct. App. 1982)..........20

*ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, 2010 WL 1170976 (W.D. Tex. Mar. 23, 2010) .....................................................................................9

*Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109 (C.D. Cal. 2009) ...........................................................................................10

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991).......................7

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 2006 WL 2868971 (N.D. Cal. Oct. 6, 2006) .........................................................................................7

*Aral v. Earthlink, Inc.*, 36 Cal. Rptr. 3d 229 (Cal. Ct. App. 2005) ........................17

*Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83 (2000) .....14, 17, 22

*Atlas Oil Co. v. Micro-Design, Inc.*, 2009 WL 411763 (E.D. Mich. Feb. 17, 2009) ...............................................................................................................12

*Barr v. Nat'l R.R. Passenger Corp.*, 2009 WL 3497776 (E.D. Pa. Oct. 28, 2009) .4, 10

*Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1445532 (N.D. Cal. Apr. 7, 2010) ...............................................................................................................8

*Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1 (D.D.C. 2004).....................5

*Bibo v. Fed. Express, Inc.*, 2007 WL 2972948 (N.D. Cal. Oct. 10, 2007)...........5, 6

*Bolter v. Superior Court*, 104 Cal. Rptr. 2d 888 (Cal. Ct. App. 2001) ..................21

*BRC Group, LLC v. Quepasa Corp.*, 2009 WL 2424669 (N.D. Cal. Aug. 07, 2009) ...............................................................................................................12

*Brody v. Am. Med. Ass'n*, 337 F. Supp. 611 (S.D.N.Y. 1971) .................................4

*Brown v. Scripps Invs. & Loan, Inc.*, 2009 U.S. Dist. LEXIS 49247 (W.D. Was. June 11, 2009) .................................................................................................23

*BrowserCam Inc. v. Gomez, Inc.*, 2008 WL 4408053 (N.D. Cal. Sept. 26, 2008) .12

*Cantrell v. City of Murphy*, 2010 WL 786591 (E.D. Tex. Mar. 1, 2010) ................4

*Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738 (9th Cir. 1979) .....7

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002) ..........................17

*Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165 (N.D. Cal. 2002).........................15, 22

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) .......3

1  *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005)................................21

2  *Douglas v. U.S. Dist. Court*, 495 F.3d 1062 (9th Cir. 2007)...................................19

3  *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530 (N.D. Cal. 2005) .............4, 6

4  *Flight Solutions, Inc. v. Club Air, Inc.*, 2010 WL 276094 (M.D. Tenn. Jan. 14, 2010)...........................................................................................................12

5  *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376 (Cal. Ct. App. 2001)...........................................................................................................17

6  *Forest Guardians v. Kempthorne*, 2007 WL 2572287 (S.D. Cal. Sept. 5, 2007).....4

7  *Gen. Retirement Sys. of City of Detroit v. Wells Fargo Mortgage Backed Secs. 2006-AR18 Trust*, 2009 WL 2137094 (N.D. Cal. July 16, 2009) ......................11

8  *Gentry v. Superior Court*, 165 P.3d 556 (Cal. 2007) ..............................................15

9  *Graff v. Qwest Comm. Corp.*, 33 F. Supp. 2d 1117 (D. Minn. 1999) .......................4

10  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).......................................................4

11  *JFE Steel Corp. v. ICI Americas, Inc.*, 2008 WL 4449080 (N.D. Ohio Sept. 30, 2008)...........................................................................................................12

12  *Jonathan Brown, Inc. v. Venetian Casino Resort, LLC*, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007)..........................................................................................9

13  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ...............................13

14  *King v. Johnson Wax Assocs., Inc.*, 565 F. Supp. 711 (D. Md. 1983) .......................5

15  *Kinney v. United HealthCare Servs., Inc.*, 83 Cal. Rptr. 2d 348 (Cal. Ct. App. 1999)...........................................................................................................15

16  *Little v. Auto Stiegler, Inc.*, 63 P.3d 979 (Cal. 2003) ..............................................15

17  *Lou v. Belzburg*, 834 F.2d 730 (9th Cir. 1987) ........................................................5

18  *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141 (C.D. Cal. 2009) .......................10

19  *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757 (E.D. Tex. 2000) ..............10

20  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)............15, 20, 21, 22

21  *P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804 (11th Cir. 2003) ..........23

22  *Pfeiffer v. Himax Technologies, Inc.*, 530 F. Supp. 2d 1121 (C.D. Cal. 2008).......13

23  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) ...............................19

24  *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*, 2006 WL 3290416 (N.D. Cal. Nov. 13, 2006) ...................................................................9

25  *S.E.C. v. Rose Fund, LLC*, 2004 WL 2445242 (N.D. Cal. Jan. 9, 2004) .................9

iii

*Specht v. Netscape Communs. Corp.*, 306 F.3d 17 (2d Cir. 2002).........................19

*Sw. Airlines Co. v. BoardFirst L.L.C.*, 2007 U.S. Dist. LEXIS 96230 (N.D. Tex. Sept. 12, 2007)...................................................................................................19

*Szegedy v. Keystone Food Prods., Inc.*, 2009 WL 2767683 (C.D. Cal. Aug. 26, 2009)...............................................................................................................10

*Unisys Corp. v. Access Co.*, 2005 WL 3157457 (N.D. Cal. Nov. 23, 2005) ..........12

*Universal Grading Serv. v. eBay, Inc.*, 2009 U.S. Dist. LEXIS 49841 (E.D.N.Y. June 10, 2009) ...................................................................................................18

*Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353 (N.D. Cal. 2007)................8

*Watson v. John K. Burch Co.*, 2003 WL 21145744 (N.D. Tex. May 14, 2003).....12

*Wheeler v. St. Joseph Hosp.*, 133 Cal. Rptr. 775 (Cal. Ct. App. 1976)..................20

**Statutes**

Cal. Civ. Code § 1670.5(a) ....................................................................................14

iv

## I.      INTRODUCTION

Defendant Yelp! Inc. ("Yelp") falls well shy of its **heavy burden** to justify transferring these cases to the Northern District of California.   Key factors in the transfer analysis strongly support maintaining these cases in the Central District of California, including (1) the considerable deference owed to Plaintiffs' choice to file suit here, *see* **Section III.B.1**, *infra*; (2) the first-to-file rule, *see* **Section III.B.2**, *infra*; (3) Yelp's extensive contacts with the Central District, *see* **Section III.B.1**, *infra*; and (4) the Central District's strong interest in deciding this controversy, *see* **Section III.B.3**, *infra*.    Meanwhile, the main factors cited by Yelp to be in its favor – presence of a permissive forum selection clause and ease of access to proof/difference in cost of litigation – carry "little weight" in the analysis, and, in any event, Yelp has failed to demonstrate that even these minor factors balance in its favor for purposes of the transfer motion.

Yelp exacts a tremendous impact on the Central District of California's business community.  Based on the geographic distribution of businesses listed on Yelp.com, it is highly probable that the number of class members found here will well exceed the number in any other federal judicial district. More specifically, Yelp has consciously reached into the Central District of California and unilaterally foisted its rating and reviews system upon some 1,137,562 businesses located here.  That is roughly **double** the number of businesses listed on Yelp which are situated in the Northern District of California, and very likely far outstrips the number of Yelp-listed businesses in any other federal judicial district. By contrast, there are 377,345 Yelp-listed businesses in the Northern District of Illinois, 103,452 in the Southern District of New York, and 10,539 in the District of Columbia.

In addition to California, the 11 named Plaintiffs in the *Cats and Dogs* and *LaPausky* actions hail from New York, Chicago, and Washington, D.C. Notwithstanding the geographic reach, a plurality of them – four of the 11 – are

1

based in the Central District of California, reflecting the concentration of class members located here.  By fighting Yelp's extortionate conduct in this Court, they have aligned the Plaintiffs' choice of forum with the Central District of California's robust interest in adjudicating this controversy.  Moreover, of the three class actions currently pending against Yelp, *Cats and Dogs* and *LaPausky* are the first- and second-filed, respectively.   All of these factors strongly support upholding Plaintiffs' choice of forum and maintaining these cases in the Central District.

Yelp's arguments for transferring this suit to the Northern District of California are based largely on a permissive (not mandatory) forum selection clause buried in Yelp's Terms of Service ("TOS") and advertising contracts (the TOS is, in turn, buried on Yelp's website).   Yelp also states—without ample support—that the convenience of witnesses and access to proof favor transfer.  Yelp's arguments are unavailing and cannot overcome the key factors which strongly favor Plaintiffs' chosen forum.  The Court should deny Yelp's motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Cats and Dogs Animal Hospital, Inc., which is based in Long Beach, filed its original Complaint against Yelp on February 23, 2010 (hereinafter, "*Cats and Dogs*").  A First Amended Complaint ("FAC") was filed on March 16, 2010, adding 9 more representative Plaintiffs, including three additional Plaintiffs situated in the Central District.

Two copycat cases were filed after *Cats and Dogs*: *LaPausky v. Yelp! Inc.* on March 3, 2010, also in the Central District (hereinafter, "*LaPausky*"); and *Levitt v. Yelp! Inc.* on March 12, 2010 (hereinafter, "*Levitt*"), originally filed in San Francisco County Superior Court, and subsequently removed by Yelp to the Northern District of California.

On March 16, 2010, *LaPausky* was transferred to the Honorable Valerie Baker Fairbank, before whom *Cats and Dogs* was already pending.  On April 16,

2

1    2010, counsel for the *Cats and Dogs* Plaintiffs filed a notice substituting

2    themselves as counsel for the Plaintiff in *LaPausky*.

3         On April 9, 2010, Yelp moved to transfer both *Cats and Dogs* and *LaPausky*

4    to the Northern District of California.  As discussed below, Yelp's motion lacks

5    merit and should be denied.

6    **III.   ARGUMENT**

7    **A.   Defendant Must Make A "Strong Showing Of Inconvenience To**

8         **Warrant Upsetting The Plaintiff's Choice Of Forum"**

9              **1.   Section 1404(a) Requires The Court To Balance Private And**

10                 **Public Interest Factors Affecting Convenience**

11        To prevail on a § 1404(a) venue transfer motion, the defendant bears a heavy

12   burden of making a "strong showing of inconvenience to warrant upsetting the

13   plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805

14   F.2d 834, 843 (9th Cir. 1986).  In deciding the motion, the court should balance

15   private and public interest factors affecting the convenience of the forum.  *Id.*

16        Private factors include the relative ease of access to sources of proof;

17        availability of compulsory process for attendance of unwilling, and

18        the cost of obtaining attendance of willing, witnesses; possibility of

19        view of premises, if view would be appropriate to the action; and all

20        other practical problems that make trial of a case easy, expeditious

21        and inexpensive . . . .   Public factors include the administrative

22        difficulties flowing from court congestion; the local interest in having

23        localized controversies decided at home; the interest in having the trial

24        of a diversity case in a forum that is at home with the law that must

25        govern the action; the avoidance of unnecessary problems in conflict

26        of laws, or in the application of foreign law; and the unfairness of

27        burdening citizens in an unrelated forum with jury duty.

28   *Id.* (quotation marks and citations omitted).

3

### 2. Unless The Balance Is *Strongly* In Favor Of The Defendant, The Plaintiff's Forum Choice Should Rarely Be Disturbed

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 545 (N.D. Cal. 2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  Underscoring the defendant's weighty burden on a motion to transfer venue is the principle that, "it is not appropriate to transfer a case from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *Forest Guardians v. Kempthorne*, 2007 WL 2572287, *4 (S.D. Cal. Sept. 5, 2007) (quotation marks and citation omitted)). Indeed, even where courts find another forum to be more convenient, they may not transfer a case unless the defendant meets its significant burden of demonstrating that the § 1404(a) factors are ***strongly*** in its favor.  *See, e.g.*, *Cantrell v. City of Murphy*, 2010 WL 786591, *5 (E.D. Tex. Mar. 1, 2010) (denying defendant's transfer motion where defendant's preferred forum was "at least slightly more convenient"); *Graff v. Qwest Comm. Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (transfer should be denied "if the factors are evenly balanced or weigh only slightly in favor of transfer").

Additionally, where the requested forum is geographically close to the current forum, any "convenience" factors, such as the location of witnesses and documents, are substantially less important.  *See Barr v. Nat'l R.R. Passenger Corp.*, 2009 WL 3497776, *4 (E.D. Pa. Oct. 28, 2009).

In class actions such as this one, courts also consider the distribution of putative class members as a key factor in deciding venue transfer motions.  *See, e.g.*, *Ellis*, 372 F. Supp. 2d 530 (Patel, J.) (denying venue transfer motion where Northern District of California was "home to a proportionately large segment of the putative class"); *Brody v. Am. Med. Ass'n*, 337 F. Supp. 611, 613 (S.D.N.Y. 1971) ("Where a large percentage of class members comes from or near New

4

1  York, transfer to another district will be denied."); *Berenson v. Nat'l Fin. Servs.,*

2  *LLC*, 319 F. Supp. 2d 1, 4 (D.D.C. 2004) (transferring class action to district with

3  "largest amount of potential class members"); *King v. Johnson Wax Assocs., Inc.*,

4  565 F. Supp. 711, 719-20 (D. Md. 1983) (transferring class action to the Central

5  District of California upon finding that "should a class eventually be certified, the

6  interests of the class would seem better served by a trial in Los Angeles than by

7  one in Baltimore, as many more class members would likely reside in close

8  proximity to the courthouse").

9  **B.     Plaintiffs' Choice Of The Central District Of California Should Not Be**
10  **Disturbed**

11        **1.     Plaintiffs' Chosen Venue Is Entitled To Great Deference,**
            **Especially Given Yelp's Active And Deep Intrusion Into The**
12          **Central District Of California**
13

14        Yelp argues the 11 named Plaintiffs' collective decision to file suit in this

15  forum should not be accorded considerable deference, as is customary, because this

16  is a class action where the chosen forum is purportedly "largely fortuitous."  Yelp

17  Mot. at 17 (citing *Lou v. Belzburg*, 834 F.2d 730, 739 (9th Cir. 1987)).  But

18  "Plaintiffs' choice of forum remains significant in a class action where it is

19  preferable to other forums in administering the action and protecting the class."

20  *Bibo v. Fed. Express, Inc.*, 2007 WL 2972948, *2 (N.D. Cal. Oct. 10, 2007).  In

21  this case, Yelp's own conduct buttresses and warrants considerable deference to

22  Plaintiffs' selection of the Central District of California as the proper forum to hear

23  this controversy.

24        Indeed, Plaintiffs' chosen venue is not "largely fortuitous"—rather, it is a

25  forum made preferable by Yelp's actively reaching into the Central District of

26  California and choosing to create listings on its website for some 1,137,562

27  businesses located here.  *See* Lee Beck Decl. ¶ 5.  That number—which feeds the

28  pool from which potential class members must be drawn—dwarfs, by almost two-

1    to-one, the number of businesses listed on Yelp.com situated in Yelp's preferred

2    forum, the Northern District of California. *See id*. The Central District of

3    California also greatly eclipses other especially populous districts in terms of Yelp-

4    listed businesses, including the Southern District of New York (103,452), and the

5    Northern District of Illinois (377,345). *See id*.

6        Because, as a result of Yelp's own conduct deliberately targeted at this

7    forum, the Central District of California is likely to hold the most—and a

8    disproportionately higher share of—class members, considerable deference to

9    Plaintiffs' venue choice is warranted by virtue of it being preferable to other

10    forums "in administering the action and protecting the class." *Bibo*, 2007 WL

11    2972948, at *2. Such a result is reinforced by the fact that a plurality of four of the

12    11 named Plaintiffs in *Cats and Dogs* and *LaPausky* are based here.[1] *See Ellis*,

13    372 F. Supp. 2d at 544 ("In judging the weight to be accorded to the choice of

14    forum, consideration must be given to the named plaintiffs' contacts with the

15    forum, including those relating to plaintiffs' cause of action.").

16        Moreover, Yelp's protestation that it has minimal contact with the Central

17    District of California and that little relevant conduct took place there, *see* Yelp

18    Mot. at 13-15, should not be believed. Yelp has thrust itself into this forum by

19    unilaterally listing over 1.1 million Central District of California businesses on its

20    website. As detailed in the First Amended Complaint, the process by which new

21    businesses become listed on Yelp is a markedly active one in which Yelp

22    commissions "Ambassadors" or "Scouts" to find and write reviews of businesses

23    in a given location. *See* FAC ¶ 67. And the process by which Yelp extorts

24

25    [1] Yelp incorrectly states that "the chosen forum is neither the plaintiffs' residence

26    nor the place where the operative facts occurred [.]" Yelp Mot. at 17. The four
Plaintiffs located in this district are: Cats and Dogs Animal Hospital, Inc. (Long

27    Beach), Le Petite Retreat Day Spa, LLC (Los Angeles), Wag My Tail, Inc.

28    (Tujunga), and Celibré, Inc. (Torrance). *See* FAC ¶¶ 3, 6, 8, 12.

businesses into buying advertising contracts occurs, as alleged, when Yelp's employees and its Elite Squad members place telephone calls to their victims, and e-mail or personally visit them.  *See id.* ¶¶ 80, 98, 99, 109, 118, 123, 136, 142, 149, 162.  Accordingly, Yelp cannot claim, after having purposely availed itself of the privilege of conducting extensive business in this forum, that it lacks sufficient contact with the Central District of California or that "minimal" relevant conduct occurred here.

For all of these reasons, the Court should afford considerable deference to Plaintiffs' choice of venue.

## 2.     The First-To-File Rule Weighs Heavily Against Transfer

Yelp argues that the pendency of a copycat action in the Northern District, which was filed after both *Cats and Dogs* and *LaPausky*, supports transfer.  *See* Yelp Mot. at 11-13.  The reverse is actually true.  The first-to-file rule is a factor weighing strongly ***against*** transfer.

The Ninth Circuit instructs that the first-to-file rule promotes efficiency and "should not be disregarded lightly."  *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)).  "Where two actions involving overlapping issues and parties are pending in two federal courts, ***there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule***."  *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 2006 WL 2868971, *6 (N.D. Cal. Oct. 6, 2006) (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (emphasis added)).

Here, application of the first-to-file rule is straightforward and balances against transfer to the district where a third-filed copycat case is pending.  Yelp's argument that the potential for consolidation with the Northern District supports transfer is wholly unavailing: that action can just as readily be consolidated with *Cats and Dogs* and *LaPausky.  See Applied Elastomerics*, 2006 WL 2868971, at *6

7

("in its moving papers, [the defendant] fails to note that the South Carolina case could also be consolidated with this case"; finding that first-to-file rule weighed against the defendant's motion to transfer).[2]

### 3. The Central District Of California Has A Strong Interest In Deciding This Controversy

Also strongly favoring the Central District over the Northern District is a vital factor that receives no mention in Yelp's motion: this district's substantial interest in protecting its business community through adjudication of this controversy.

"The interests of justice are promoted when a localized controversy is resolved in the region that it impacts." *Forest Guardians*, 2007 WL 2572287, at *4. Protecting businesses situated within the Central District of California—which likely make up the largest percentage of class members—from extortionate practices is a compelling interest in this respect. *See Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1365 (N.D. Cal. 2007) (estimate that 20% of potential class members resided in California, which has an interest in "preventing fraudulent practices which may have an effect both in California and throughout the country," supported California's local interest in controversy; court denied transfer to Eastern District of Virginia). Accordingly, the Central District of California's local interest weighs strongly against transfer.[3]

---

[2] Alternatively, the later-filed action may be dismissed or stayed under the first-to-file rule. *See Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1445532, *2 (N.D. Cal. Apr. 7, 2010).

[3] "Concurrent with the local-interest factor is the issue of burdening citizens of an unrelated forum with jury duty." *Van Slyke*, 503 F. Supp. 2d at 1365. Because the Central District of California has a greater interest in adjudicating this dispute than the Northern District of California, this factor also strongly disfavors transfer. *See id.*

8

1    **4.    Yelp Has Failed To Show That Ease Of Access To Proof Or
2          Difference In Cost Of Litigation Favors Transfer**

3         Yelp argues that transfer to the Northern District of California is favored by

4    the factors of ease of access to proof and difference in cost of litigation.  It claims

5    that the Northern District is a more convenient forum for the "vast majority" of

6    relevant witnesses, and "most documents" are located there. *See* Yelp Mot. at 15-

7    16.  But Yelp has failed to make the strong showing required to prevail on these

8    factors.

9         "To demonstrate an inconvenience to witnesses, the moving party must

10   identify relevant witnesses, state their location and describe their testimony and its

11   relevance." *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*, 2006

12   WL 3290416, *7 (N.D. Cal. Nov. 13, 2006); *see also S.E.C. v. Rose Fund, LLC*,

13   2004 WL 2445242, *3 (N.D. Cal. Jan. 9, 2004).

14        "A party seeking a transfer of venue must do more than make general

15   allegations that key witnesses are unavailable or are inconveniently located . . . .

16   Rather, the moving party must identify specific witnesses and outline the substance

17   of their testimony." *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, 2010

18   WL 1170976, *3 (W.D. Tex. Mar. 23, 2010).  Yelp has not done so—instead, it

19   merely sets forth broad "category[ies] of witnesses," all of which happen to be

20   Yelp employees, and then states that these categories of witnesses (not specific

21   individuals) are located in the Northern District.  *See* Yelp Mot. at 15-16.

22   Furthermore, any inconvenience to Yelp's employees must be given little weight,

23   because Yelp will be able to compel its employees' testimony at trial.  *See*

24   *Jonathan Brown, Inc. v. Venetian Casino Resort, LLC*, 2007 WL 4532214, *6

25   (N.D. Cal. Dec. 19, 2007); *see also STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551,

26   1556 (N.D. Cal. 1988) (noting that a court should "discount inconvenience to [a]

27   party's witnesses when they are employees who can be compelled to testify");

28   *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132

9

(C.D. Cal. 2009) (same).[4]

The location of Yelp's documents is similarly of little importance.  "[E]ase of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations."  *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141 (C.D. Cal. 2009); *Szegedy v. Keystone Food Prods., Inc.*, 2009 WL 2767683, *6 (C.D. Cal. Aug. 26, 2009) (same); *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000) (accessibility and location of sources of proof have been given "decreasing emphasis" in courts' transfer analyses "due to advances in copying technology and information storage").  Given that nearly all documents relevant to Plaintiffs' claims will be electronic, the physical location of the documents is especially irrelevant.  And to be sure, many relevant documents are situated outside of the Northern District and within the Central District, given the number of class members located in the latter, including four of the named Plaintiffs.

Furthermore, any "convenience" factors, such as the location of witnesses and documents, are made substantially less important by the geographic proximity of the Central District to the Northern District, dropping them out of the analysis entirely.  *See Barr*, 2009 WL 3497776, at *4 ("in cases where the requested forum is geographically close to the current forum, the district court should not consider convenience factors" (quotation marks and citation omitted)).  Here, regardless of where the key witnesses and documents are located, there is no appreciable difference in convenience given that the Central District is directly adjacent to the

---

[4] Yelp suggests that the Northern District "is more likely to be convenient for any non-party witnesses," while admitting that it has failed to actually identify any such individuals. Yelp Mot. at 16 n.4. Accordingly, Yelp has also failed to make any showing that the location of non-party witnesses favors transfer. Indeed, given Yelp's overwhelming impact on businesses in the Central District of California— and the sheer number of potential class members located here—the location of non-party witnesses is more likely to favor the Central District.

Northern District.  *See also Gen. Retirement Sys. of City of Detroit v. Wells Fargo Mortgage Backed Secs. 2006-AR18 Trust*, 2009 WL 2137094, *6 (N.D. Cal. July 16, 2009) (significance of convenience to witnesses factor "is substantially reduced by the ease of communication and interstate air travel in today's business community"; forum not necessarily inconvenient "if it is readily accessible in a few hours of air travel").

### 5. The Permissive Forum Selection Clauses In Yelp's TOS And Advertising Agreements Cannot Overcome Plaintiffs' Choice Of Forum

Yelp argues that Plaintiffs' choice of the Central District should be rejected owing to forum selection clauses appearing in the Terms of Service ("TOS") on Yelp's website, as well as Yelp's Advertising Agreements, which reference venue in federal courts in "San Francisco County, California."  *See* Yelp Mot. at 7-11. But as discussed below, the Court should disregard these venue provisions as both procedurally and substantively unconscionable.

Moreover, and as a threshold matter, even if the venue provisions are valid, they carry little weight in the transfer analysis.  This is because, as Yelp acknowledges, the venue provisions are permissive rather than mandatory.  Federal courts have repeatedly declined to grant more than a modicum of weight to the existence of permissive forum selection clauses in addressing motions to transfer venue.

#### a. Because They Are Permissive Rather Than Mandatory, The Forum Selection Clauses Carry Little Weight In The Transfer Analysis

There is no dispute that the forum selection clauses in Yelp's TOS and Advertising Agreements are permissive: they authorize but do not require litigation in the federal courts of San Francisco County.  *See* Yelp Mot. at 4.

When confronted with permissive forum selection clauses on a motion to transfer venue, numerous federal courts have declined to grant them significant

11

weight in the analysis.  *See, e.g.*, *Watson v. John K. Burch Co.*, 2003 WL 21145744, *4 (N.D. Tex. May 14, 2003) ("Given the permissive nature of the forum selection clause, the court refuses to give significant weight to the contractual provision, and as such does not shift the burden of persuasion to [the plaintiff] as it would if a mandatory forum selection clause were involved."); *Atlas Oil Co. v. Micro-Design, Inc.*, 2009 WL 411763, *3 (E.D. Mich. Feb. 17, 2009) ("courts consider a permissive forum selection clause to be a relatively minor factor in the transfer analysis" (citing cases)); *Flight Solutions, Inc. v. Club Air, Inc.*, 2010 WL 276094, *3 (M.D. Tenn. Jan. 14, 2010) (citing cases where permissive forum selection clauses were assigned "little weight in deciding whether to transfer venue"); *JFE Steel Corp. v. ICI Americas, Inc.*, 2008 WL 4449080, *3 (N.D. Ohio Sept. 30, 2008) ("a *permissive* forum, as opposed to a mandatory forum, is given little weight in balancing the decision to the permissive forum"(emphasis in original)); *BRC Group, LLC v. Quepasa Corp.*, 2009 WL 2424669, *4 (N.D. Cal. Aug. 07, 2009) (presence of permissive forum selection clause did not alleviate defendant's burden of overcoming plaintiff's venue on a motion to transfer venue, which court denied).

Yelp relies on a single non-binding decision from the Northern District of California in asserting that a permissive forum selection clause should be given "substantial consideration" under § 1404(a).  Yelp Mot. at 7 (citing *Unisys Corp. v. Access Co.*, 2005 WL 3157457, *5 (N.D. Cal. Nov. 23, 2005)).  In addition to contravening the vast case law affording little weight to permissive forum selection clauses, the Northern District of California recently criticized the *Unisys* opinion and its reasoning.  *See BrowserCam Inc. v. Gomez, Inc.*, 2008 WL 4408053, *5 (N.D. Cal. Sept. 26, 2008) (noting that *Unisys* is non-binding and "relies on out-of-circuit cases"; rejecting the argument that a permissive forum selection clause is entitled to "substantial consideration," and denying the defendant's motion to

*Cats and Dogs Animal Hospital, Inc.et al. v. Yelp! Inc.*, Case No. 2:10-cv-01340-VBF-SS
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

1    transfer venue).[5]

2         This Court should also follow the long line of federal decisional authority

3    granting little weight to permissive forum selection clauses within the analysis

4    under §1404(a).

5         **b.  The Forum Selection Clauses Should Be Disregarded As
          Unconscionable**

6

7         Their permissive nature notwithstanding, the forum selection clauses should

8    be disregarded as unconscionable.

9         When Yelp enters a new market, it creates new listings for businesses there.

10   Yelp categorically refuses ever to allow businesses to "opt-out" of being listed.[6]

11   After creating new business listings, Yelp contacts businesses directly, by

12   telephone and email, pressuring them to "claim" their listing and sign up for a free

13   business owner account, which allows the business to post accurate basic

14   information (such as address and hours of operation) and track the hits on the

15

16   ----
     [5] Yelp's brief also misleadingly quotes and cites *Jones v. GNC Franchising, Inc.*,

17   211 F.3d 495 (9th Cir. 2000) and *Pfeiffer v. Himax Technologies, Inc.*, 530 F.

18   Supp. 2d 1121, 1125 n.4 (C.D. Cal. 2008).  *See* Yelp Mot. at 7-8.  *Jones* involved a
     mandatory forum selection clause.  *See Jones*, 211 F.3d 495, 496 (clause provided

19   that action "shall be brought *only* within the Commonwealth of Pennsylvania"

20   (emphasis added)).  As discussed in the case law cited above, whether a forum
     clause is mandatory or permissive is dispositive of the question of its significance

21   in the venue transfer analysis.  Meanwhile, in *Pfeiffer*, the court determined that

22   the clause at issue was not even a forum selection clause at all, but merely a
     provision designating an agent for service of process that had no bearing on venue.

23   *See Pfeiffer*, 530 F. Supp. 2d at 1125.  As such, its citation of *Unisys* is only *dicta*.

24   [6] *See* http://www.yelp.com/business/common_questions (**Q.** I'm a business owner
     and don't want my business to be listed on Yelp – can I have it removed from

25   Yelp? **A.** *Actually, no. Consumers have the right to talk about what they like (and

26   don't like) about a meal they ate, a plumber that they hired, or a car wash that they
     visited. The law is clear on this point—even if you've registered your business

27   name as a trademark—so your best bet is to engage with your fans and critics alike

28   and hear what they have to say.*)
     ----

*Cats and Dogs Animal Hospital, Inc.et al. v. Yelp! Inc.*, Case No. 2:10-cv-01340-VBF-SS
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

business's Yelp listing. It is this solicitous process on which Yelp relies to bind captive business owners to Yelp's Terms of Service.

But the process is even more disingenuous because business owners are only notified of those Terms of Service through a hidden sentence, in miniscule, light grey font, *see* Lee Beck Decl. Ex. B, at the bottom of Yelp's business home page (biz.yelp.com), similar to the Yelp home page (yelp.com), *see* Lee Beck Decl. Ex. A. If they see the notice, owners must then click a link to access the Terms of Service. Crucially, *business owners are never asked to click an "I Agree" button to be bound.* Instead, Yelp claims they are bound simply for "continuing beyond" the home page. Thus, just clicking the link to see the Terms of Service purportedly binds business owners before they can even review those Terms. But this type of "browse wrap" agreement has been <u>rarely upheld</u>, and should not be upheld now.[7]

Yelp's Terms of Service, and the permissive forum selection clause it seeks to enforce, are procedurally and substantively unconscionable, part of an adhesionary contract that lacks mutuality.  For these reasons, the Court should, respectfully, set aside the disputed provision.

### c. Legal Standard For Unconscionability

If a court finds that a contract or any clause was unconscionable at the time it was made, it may refuse to enforce the contract or clause, or limit its applicability to avoid any unconscionable result. Cal. Civ. Code § 1670.5(a). Unconscionability "has both a 'procedural' and a 'substantive' element." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The elements are considered on a "sliding scale[,] . . . such that the more

---

[7] The process may be more tenuous still: the Terms of Service themselves purport to bind any person who accesses, browses, crawls, scrapes, or in any way uses Yelp.com (not just a person who navigates past the homepage).  *See* Byrne Decl. Exs. E, F.  By this language, even individuals who perform a Google search for a business  are bound when the business's Yelp listing shows as a search result.

substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (internal quotation omitted).

**Procedural** unconscionability focuses on oppression or surprise arising from an inequality of bargaining power of the parties and the absence of real negotiation or a meaningful choice on the part of the weaker party; involves the extent to which supposedly agreed-upon terms are hidden in the prolix printed form drafted by the party seeking to enforce the disputed term; and generally takes the form of a contract of adhesion. *See Nagrampa*, 469 F.3d at 1280; *see also Kinney v. United HealthCare Servs., Inc.*, 83 Cal. Rptr. 2d 348, 353 (Cal. Ct. App. 1999); *Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 983 (Cal. 2003)).

The relevant inquiry in determining **substantive** consciability is whether the provision is "overly harsh or generates one-sided results." *Nagrampa*, 469 F.3d at 1280 (citation omitted). The primary consideration is mutuality. *Id.* at 1281. "Substantively unconscionable terms . . . may generally be described as unfairly one-sided." *Gentry v. Superior Court*, 165 P.3d 556, 572 (Cal. 2007). In contracts of adhesion, substantive unconscionability "need not be present in the same degree" as procedural unconscionability. *Id.*

In sum, "the procedural component [of unconscionability] is satisfied by the existence of unequal bargaining positions and hidden terms common in the context of adhesion contracts [and] the substantive component is satisfied by overly harsh or one-sided results . . . ." *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1172 (N.D. Cal. 2002). Forum selection clauses may be set aside if unconscionable under the "sliding scale" analysis. *See, e.g.*, *Nagrampa*, 469 F.3d 1257 (forum selection clause unenforceable as both procedurally and substantively unconscionable).

The "Terms of Service" Yelp relies on for its claim that Plaintiffs agreed to a permissive forum selection clause should be deemed unconscionable and otherwise disregarded because:

15

(1)    Yelp users have no opportunity to negotiate the Terms of Service and—because they are not required to agree to them to use the service—no opportunity to reject the contract;

(2)    Any notification of the Terms of Service—whether on Yelp's homepage and purportedly applicable to each of its 31 million individual users, or on the biz.yelp.com website and purportedly applicable to any business claiming its Yelp.com listing—is miniscule and hidden;

(3)    The Terms of Service purportedly apply to "[a]ll persons who proceed past the homepage of the Yelp Website," Byrne Dec. ¶ 9, even though deeper pages are directly accessible (for example through a Google search), so that a user may have no notification;

(4)    The Terms of Service *cannot* apply, in any event, to Class members who never claimed their Yelp.com business listing, but who were solicited for advertising as part of Yelp's extortionate scheme;

(5)    Unrepresented business owners and individual Yelp users are unlikely to know what the legal terms "personal jurisdiction" and "venue" in the forum selection clause mean;

(6)    The forum selection clause is hidden in a "Miscellaneous" section covering at least 11 different topics and therefore unlikely to draw attention;

(7)    The forum selection clause effectively shields Yelp from liability by making the bringing of claims for most plaintiffs cost-prohibitive;

(8)    The forum selection clause lacks mutuality because it provides "you do not have any authority of any kind to bind Yelp in any respect whatsoever." Byrne Decl. Ex. F at ¶ 16.; and

(9)    The Terms of Service date only to 2007 or 2008, Byrne Dec. ¶¶ 10-11, even though this action is brought for claims arising out of Yelp's conduct beginning in 2004.

### i.   The TOS Forum Selection Clause Is Procedurally Unconscionable

California courts begin examining a contract for evidence of unconscionability by "inquir[ing] . . . whether the contract is one of adhesion." *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th at 113. An adhesionary contract is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.*

The California Court of Appeal has held that "[a] finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 382 (Cal. Ct. App. 2001) (emphasis added); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) ("The DRA is procedurally unconscionable because it is a contract of adhesion: a standard-form contract . . . ."); *Aral v. Earthlink, Inc.*, 36 Cal. Rptr. 3d 229, 238 (Cal. Ct. App. 2005) (finding "quintessential procedural unconscionability" where "the terms of the agreement were presented on a 'take it or leave it' basis through installation of the software or through materials included in the package mailed with the software with no opportunity to opt out").

Because the Yelp Terms of Service are embodied in a form "agreement" that purportedly applies to anyone who uses the Yelp website, plaintiffs and class members had no opportunity to negotiate it. Arguably, they lacked even the power to *reject* the Terms of Service, since Yelp claims they either apply to anyone who has ever negotiated past Yelp's homepage or business homepage (biz.yelp.com), even though the notification of the agreement and its application is miniscule and hidden,[8] or to anyone who accesses Yelp in any manner, even though search

---

[8] Yelp has also not said how it notified people and businesses of the Terms of Service and their application—if at all—from October 2004 to the present; the only evidence available of notice is what is on Yelp's website today.

engines.[9] This is true despite that Yelp users may directly penetrate beyond the Yelp homepage or business homepage through outside links, such as through a Google search, and thus purportedly be bound by Terms of Service without ever receiving notification—not even miniscule, hidden notification.

The contract is especially adhesive with respect to Plaintiffs and class member businesses because Yelp unilaterally creates business listings then engages in direct, high-pressure tactics urging businesses to "claim" their listings, and categorically refuses to delist businesses from the Yelp site. This is very different than the circumstances in cases like *Universal Grading Serv. v. eBay, Inc.*, 2009 U.S. Dist. LEXIS 49841, at *64 (E.D.N.Y. June 10, 2009), where the court held a User Agreement was not procedurally unconscionable because plaintiffs could have chosen not to register for eBay. To the contrary, the "option" businesses have to register for a free business owner account is illusory because the owner must either allow his business to be listed with cursory and often inaccurate information—and never view what people are saying about the business (since even browsing past Yelp's home page purportedly binds the user to the Terms of Service)—or "claim" the listing and by doing so be bound to a contract the owner has no ability to negotiate and likely never saw.

Worse, just by browsing Yelp to ***explore*** the ***possibility*** of claiming a business's listing, the business becomes bound by the Terms of Service, including merely by reviewing those terms since, by doing so, the owner is proceeding beyond the "point of no return" represented by the biz.yelp.com homepage. Moreover, there are a substantial number of class members for whom Yelp created

---

[9] The Terms of Service purport to bind any person who accesses, browses, crawls, scrapes, or in any way uses Yelp.com (not just a person who navigates past the homepage) (*see* Byrne Decl. Exs. E, F). By this language, even individuals who perform a Google search for a business are bound when the business's Yelp listing shows as a search result.

business listings and solicited to become Sponsors, but who never actually logged onto Yelp or "claimed" their business's listing—these businesses *could not have been* bound by the Terms of Service.

Yelp's users are not required to click an "I Agree" button or take any other affirmative action to indicate agreement to the Terms of Service. Instead, the terms purport to apply to anyone who merely browses the site. This type of "browse wrap" agreement[10] has rarely been enforced or upheld by a court. *See, e.g.*, *Douglas v. U.S. Dist. Court*, 495 F.3d 1062 (9th Cir. 2007) (issuing writ of mandamus to vacate order compelling arbitration based on changes to terms of service in browse wrap license); *Specht v. Netscape Communs. Corp.*, 306 F.3d 17 (2d Cir. 2002) (where consumers are urged to download free software at the immediate click of a button, reference to existence of license terms on a submerged screen were insufficient to place consumers on notice of terms); *Sw. Airlines Co. v. BoardFirst L.L.C.*, 2007 U.S. Dist. LEXIS 96230, at *15 (N.D. Tex. Sept. 12, 2007) (as browse wrap agreements have become more prevalent, general principle that has emerged in case law is that an agreement's validity depends on whether the user has actual or constructive knowledge of the site's terms and conditions *prior to using the site*).

The *Specht* case is especially useful in analyzing the browse wrap Terms of Service at issue here. The defendant sought to compel arbitration based on a clause in a license agreement provided when consumers downloaded free software. The license was on a "submerged" screen, which required users to click through, then scroll to review the terms. The Second Circuit held that, when products are free and users are invited to download them, in the absence of a "reasonably

---

[10] "[A] browse wrap license is part of the website, e.g., license terms are posted on a site's home page or are accessible by a prominently displayed hyperlink, and the user assents to the contract when the user visits the web site." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429 (2d Cir. 2004) (citation omitted).

*Cats and Dogs Animal Hospital, Inc. et al. v. Yelp! Inc.*, Case No. 2:10-cv-01340-VBF-SS
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

1   conspicuous notice that they are about to bind themselves to contract terms, the

2   transactional circumstances . . . support our conclusion that plaintiffs did not

3   manifest assent to [the] license terms." 306 F.3d at 39.

4        Like the defendant offering free download services, Yelp offers users and

5   businesses free directory services. When a business "claims" its Yelp listing, Yelp

6   even calls that a "free business owner account." Since Yelp solicited plaintiffs to

7   claim their sites, then provided the account for free—and since the hidden notice in

8   miniscule, light grey font at the bottom of the page is not "reasonably

9   conspicuous"—the Court should similarly find that the circumstances do not show

10   plaintiffs' assent to Yelp's Terms of Service.

11        Even if plaintiffs had considered the Terms of Service before "clicking

12   through" to purportedly bind them, though, it is unlikely that unrepresented

13   business owners, now Plaintiffs and members of the proposed classes, would have

14   understood the terms "personal jurisdiction" and "venue" used in the clause. The

15   fact that Plaintiffs are business owners does not defeat their procedural

16   unconscionability claim. *See Nagrampa*, 469 F.3d at 1283 (citing *A&M Produce*

17   *Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 124 (Cal. Ct. App. 1982) ("experienced but

18   legally unsophisticated businessmen may be unfairly surprised by unconscionable

19   terms, and [] even large business entities may have *relatively* little bargaining

20   power, depending on the identity of the other contracting party and the commercial

21   circumstances surrounding the agreement." (citation omitted))).

22        Moreover, the forum selection clause at issue here is comprised of a single

23   sentence in a large (11 sentences, 325 words), catchall "Miscellaneous" section

24   covering at least 11 different subjects and buried at the end of the Terms of

25   Service. *See* Byrne Decl. Ex. F at ¶ 20.  Thus the element of surprise here is strong.

26   *See, e.g.*, *Wheeler v. St. Joseph Hosp.*, 133 Cal. Rptr. 775, 785 (Cal. Ct. App. 1976)

27   ("Where the contract is one of adhesion, conspicuousness and clarity of language

28   alone may not be enough to satisfy the requirement of awareness. Where a

1  contractual provision would defeat the 'strong' expectation of the weaker party, it

2  may also be necessary to call his attention to the language . . .").

3      Finally, where a party has not received actual notice of a forum selection

4  clause in an adhesionary contract, the clause is unenforceable. *See Nagrampa*, 469

5  F.3d at 1291-92 (citations omitted). Plaintiffs had no idea they had ever agreed to

6  the forum selection clause and did not expect, if a dispute arose between Yelp and

7  their businesses, to be limited to litigating only in the Northern District of

8  California.  *See* Declarations of Gregory Perrault, John Lewis, Yvonne Tannous,

9  Mary Seaton, Kevin DiCerbo, & Jacob Aaron Blecher.

10  **ii.   The TOS Forum Selection Clause Is Substantively Unconscionable**

11     If the "place and manner" restrictions of a forum selection provision are

12  "unduly oppressive," or "have the effect of shielding the strong party from

13  liability" then it lacks mutuality and is substantively unconscionable. *See*

14  *Nagrampa*, 469 F.3d at 1287 (citation omitted).  For example, in *Bolter v. Superior*

15  *Court*, 104 Cal. Rptr. 2d 888, 894 (Cal. Ct. App. 2001), the court found a forum

16  clause requiring "mom and pop" franchisees to travel to an international

17  franchisor's jurisdiction unduly oppressive. California courts should scrutinize the

18  effects of contracts styled as "mutual" when "it is difficult to envision the

19  circumstances under which [they] might negatively impact" the sophisticated

20  corporate party. *Discover Bank v. Superior Court*, 113 P.3d 1100, 1109 (Cal. 2005)

21  (finding a mutually-worded condition on paper to be an illegal exculpatory clause

22  in practice).

23     Likewise, in *Comb*, the court struck down a forum selection clause used by

24  PayPal very similar to the one Yelp seeks to enforce here. That clause required

25  arbitration in Santa Clara County, PayPal's backyard. Because PayPal serves

26  millions of customers throughout the United States, and because the average claim

27  was likely to be low, the Court held that the restriction of venue to PayPal's home

28  county was effectively a "means by which the arbitration clause serves to shield

21

1   PayPal from liability . . . ." *Comb*, 218 F. Supp. 2d at 1177. It therefore set aside

2   the provision.

3        The circumstances are similar here. Requiring every one of Yelp's 31

4   million users, or every business listed on Yelp—which currently lists businesses in

5   thousands of cities, in every U.S. state, and more in Canada, Ireland, and the

6   U.K.—to file suit in San Francisco, the location of Yelp's headquarters, is highly

7   favorable to Yelp and highly prejudicial to users and businesses. *See Nagrampa*,

8   469 F.3d at 1289 (finding forum selection clause "oppressive" where it placed

9   venue a few miles away from the large corporate defendant's headquarters, but

10  3,000 miles away from the small business plaintiff, who would have to hire a

11  lawyer familiar with Massachusetts law). Because of the nature of the services

12  Yelp provides, it is likely that any claim asserted against Yelp would be small. In

13  this manner, Yelp's forum selection clause would effectively bar nearly all

14  potential plaintiffs from pursuing claims against the company. This is the *sine qua*

15  *non* of unconscionability. *Cf. Nagrampa*, 469 F.3d at 1290 ("The forum selection

16  provision has no justification other than as a means of maximizing an advantage

17  over franchisees." (citation omitted)).

18        In addition, the forum selection clause purports to bind Yelp's potential

19  opponents to venue in the Northern District, but maintains that Yelp's counterparty

20  "do[es] not have any authority of any kind to bind Yelp in any respect

21  whatsoever." *See* Byrne Decl. Ex. F at ¶ 16.  The California Supreme Court has

22  held just such a provision substantively unconscionable. *See Armendariz*, 24 Cal.

23  4th at 119 (agreement requiring arbitration only for claims of weaker party but

24  choice of forums for stronger party lacked mutuality and was substantively

25  unconscionable).

26        **iii.   The Advertising Agreements Are Unconscionable**

27        The Advertising Agreements for Plaintiffs Sofa Outlet, Celebré, and

28  Bleeding Heart Bakery are susceptible to many of the same criticisms as Yelp's

Terms of Service, for example: (1) the contracts are adhesionary; (2) the forum selection clause in each is inconspicuous, buried in a large, catchall "Miscellaneous" section and using legal terms lay people are unlikely to understand; and (3) the forum selection clause effectively shields Yelp from liability to any potential small business plaintiff located outside the Northern District of California.

In addition, the Sponsor Plaintiffs state claims in the First Amended Complaint for civil extortion whereby they were compelled to enter into Advertising Agreements with Yelp under the threat of financial ruin if they refused. As Yelp noted in its Motion to Dismiss, extortion is a form of duress. And a contract formed as a result of duress is unenforceable.

"The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general" including whether there was any duress or other misconduct in connection with the agreement. *P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citation omitted).

Recently, a Ninth Circuit district court refused to enforce a forum selection clause contained in an agreement arising out of an allegedly fraudulent transaction. The court held that "Plaintiffs had no true choice in signing" the agreement, especially where "there exist[ed] a significant disparity between Plaintiffs and Defendants" and where the Defendant "came into [Plaintiffs'] forum to solicit Plaintiffs' investment." *Brown v. Scripps Invs. & Loan, Inc.*, 2009 U.S. Dist. LEXIS 49247, at *10-11 (W.D. Was. June 11, 2009).

Like the *Brown* plaintiffs, Yelp Sponsors who joined as a result of Yelp's extortionate threats were sought out by Yelp, were in a disparate bargaining position since Yelp wielded the power to substantially affect their businesses, and had no "true choice" in assenting to the Advertising Agreement ("assenting" because they were never asked negotiate, but rather only to type "I agree" in

23

1  response to an email from a Yelp sales employee containing the agreement). These
2  emailed agreements came immediately after Yelp's high-pressure sales calls.
3  Further, under the circumstances, it is clear the agreements were being offered on a
4  "take-it-or-leave-it" basis, giving the Sponsors no opportunity to negotiate.

5        For all of these reasons, the Court should decline to give effect to the forum
6  selection clauses in Yelp's TOS and Advertising Agreements.

7  **IV.    CONCLUSION**

8        Plaintiffs respectfully request that the Court deny Yelp's Motion to Transfer
9  Venue.

10

11  DATED: April 19, 2010                    Respectfully Submitted,

12                                            /s/Jared H. Beck
13                                           Jared H. Beck

14                                           **THE WESTON FIRM**
15                                           GREGORY S. WESTON
                                             JACK FITZGERALD
16                                           888 Turquoise Street
17                                           San Diego, California 92109
                                             Telephone: 858 488 1672
18                                           Facsimile:  480 247 4553
19
20                                           **BECK & LEE BUSINESS TRIAL**
                                             **LAWYERS**
21                                           JARED H. BECK
                                             ELIZABETH LEE BECK
22                                           Courthouse Plaza Building
23                                           28 West Flagler Street, Suite 555
                                             Miami, FL 33130
24                                           Telephone: 305 789 0072
25                                           Facsimile:  786 664 3334
26                                           **Counsel for Plaintiffs and the**
27                                           **Proposed Classes**
28

---
24